The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Pioneer Courthouse. We're pleased to be here today to hear these matters. This is the time set for Montana Wildlife Federation versus Debra Ann Haaland, Western Energy Alliance and Anschutz Exploration Corporation and United States and the, what I'm calling the companion cases of Western Watersheds Project Center for Biological Diversity versus Debra Ann Haaland, State of Wyoming and Chesapeake Exploration and Anschutz Exploration Corporation and United States. States of America. I think the parties have been told, it seems like it might make sense to go ahead and proceed with the day sheet page two case, which is the Western Watershed Project Center versus, and Center for Biological Diversity versus Debra Haaland. And so we will go ahead and proceed in that fashion. Somehow you all got about five extra minutes. Hopefully you won't need all of that time when we combine both of these cases. If you all have any suggestions on how to proceed or which way you're going to be organizing your arguments, I'm happy to hear it as well. But otherwise, please come forward. I may please the court. Good morning. My name is Bill Sparks. I'm here on behalf of Chesapeake Exploration. I'll be arguing first and then Mr. Gibson will go second. I will be doing the rebuttal. Chesapeake is a little bit unique in this case in that we actually were at the lease sale. We purchased leases in 2018 and then we were diligent and we developed those leases. We submitted our permits to drill with the BLM. It was a site-specific analysis that found no sage-grouse potential habitat related there. And we developed our leases. And then years later, without our knowledge or our participation, our oil and gas leases and our contracts were canceled by the district court in Idaho. Interestingly enough, there's not a single oil and gas lease in Idaho at issue in this case. Our leases are in Wyoming. So with that, I'd like to really talk about three particular issues today. One is this idea of final agency action. And what are we actually vacating in this case? Because I don't think that a contract between the United States and Chesapeake is an agency decision under the APA section 702 or 706 that can be vacated. I'm sorry. Did you make this argument in your brief? I'm sorry? Did you argue in your brief that there was no final agency action as opposed to that there was no injunction? Yes. I believe it's part of the concept that as the district court lacks the jurisdiction to vacate one of our contracts. And we've always argued. And first and foremost, we will not party to the case below to make this argument. This argument has been made. It's been made. Were you adequately represented below then? Yes. Were we adequately represented below? No.  I think this court has already held under the standards for Rule 19 and Rule 24 that we were not. I think that's a law of the case. I don't think that's really in this case. I was just a follow-up question. So from our perspective, the agency decision at issue in this case is the agency's decision that's found at the Chesapeake record at 309. Can you show me where in your brief you made this argument? I think, Your Honor, I think it goes to a lot of different issues. I don't think it's necessarily that— Can you just show me where in your brief you made the argument that you're about to make early now? Go on. I think it's part of the Rule 19 argument, is what I'm saying. So our Rule 19 argument is that it's vacating our leases, which are not agency decisions. And we don't think that you can vacate a contract in which we're not a party to—underlying a case in which we're not a party to. Well, that's a different question than whether it was a final agency action, which is what you were just about to argue. Well, I think that, one, we weren't—I don't think it's really an issue of something that we had to brief. I think this Court can always say that what is being challenged here is agency action. That's what we're talking about. That's not in your briefs. No, it is in my—I mean— I've read this very diligently, and I don't remember any issue about whether there was a final agency action. Okay. Well, I'd just like to sort of make the argument that for purposes of Rule 19, what we're really talking about is that we were not parties to a case in which our contract was invalidated. I understand that. That argument you did make, but not that there was no final agency action. Okay. Well, I still think that for purposes of that argument, this Court can still consider whether or not an oil and gas lease is an agency decision. I think it's a contract. It's not a decision. I don't think that any— Well, somebody had argued it to us, but nobody did. Okay. Anyway, go ahead. Well, I think kind of going with that argument is whether or not this Court has had jurisdiction over whether or not our leases were actually canceled. And there was some discussion in the previous oral arguments that there's no—that these, as a matter of law, the District Court did not cancel our leases. And I think if you look at the stay order from the District Court— Well, in fact, it didn't cancel. Whatever it said in the stay order in passing, what does the actual order that's on appeal say? Well, it says that the lease sales are set aside. And then in the order staying that decision, it said— Where does it even say that? I'm sorry. I don't— Where does it say that the lease sales are set aside? It believes it's at— It's at our record site 173. Or it's—actually, it's in the—it's page 17 of our record. It's on page 48. This is the order staying the judgment. So we have an order that says— I know, but I don't want to know the order staying the judgment. I want to know where in the order that we're—it's actually the summary judgment order. In the summary judgment order, where is it? In the summary judgment order, it says that the lease sales are set aside. It clarifies that in the stay order. It's also clarified in other orders. It's clarified in the order on our motion to intervene, which is our record site 38. It says that the order actually does so. This is an order that we appealed, which is on page—that's on page 38 of our record. It says the—his previous order actually does so. It cancels our leases. I take it you're saying this goes to your standing argument? It goes to a lot of the arguments that we're making. Standing, Rule 19, because they have argued that this court doesn't have jurisdiction to adjudicate our appeals. And we most certainly think that it does. Counsel, I'm looking at—these things are all paginated differently. 1 ER 073, which is page 61 of the memorandum order and decision, says accordingly the phase one lease sales are set aside. Is that what you're referring to? That's what the district court said in the summary judgment order. That's correct. I'm trying to figure out what you're arguing today here, because it seems like your main issue was standing and the cancellation and how it related to standing. But I don't know if you're trying to make another separate argument. I'm making that argument as well. So I think that they have made this argument, and I'm just simply responding to the fact that they don't— When you say they, who's they? Who's they? The Western Watershed Project has argued that the court did not actually cancel our leases so that that then negates a lot of the arguments that we have on Rule 19 and on standing. We simply think that's not the case. We think the district court was very clear, and not only in that order, but in the subsequent orders interpreting its own decision that's saying that our leases are canceled. And we think for purposes of Rule 19, why this is extremely important is that if it's going to take an action in a district court in Idaho in which we're not a party, this court has already said in our intervention appeal that we are indispensable. That's sort of the law of the case in our mind. And if we're indispensable and we were not joined at a district court level, we think that that is something that this court and a district court should have considered. At the time that that order occurred, that that decision was made, you have told the court that you are not seeking to upset the Phase 1 decision. Is that right? No. We sought to intervene to appeal the Phase 1 decision. Right. And our position is that this court and the district court and the plaintiffs and the federal defendants should have joined us as an indispensable party. In sui sponte under Pitt-River, these courts have an obligation to do so. But as to what the earlier decision case decided, the intervention case, it decided that you were indispensable parties for the purposes of the appeal, not for purposes of the district court proceedings. Is that right? Because we weren't part of the district court proceedings, I'm not sure how we could have made that argument. Our point is that for purposes of this appeal, this court – Maybe you couldn't have made the argument, but in terms of arguing that it's already been decided whether you were indispensable in the district court, it hasn't been because, in fact, you didn't ask the earlier – you told the earlier panel that you were just looking to intervene for purposes of the appeal. Well, and to have participated in further stages of the litigation. We have other reasons in further stages. But not to upset the past. Well, I don't think you can really separate the two. I think for purposes of appeal means that we have the right to challenge the summary judgment order. That's what we are appealing is the summary judgment order. And that order should have, prior to its issuance, included us as an indispensable party. Counsel, on the merits, isn't that what we heard argument about two years ago? And while it's interesting, I don't see argument here before us. You're appealing something where you say that, for example, the prioritization was just fine the way they did it. So did you have additional arguments to make on the merits that you didn't get to make and you're not making before us? Yes, Your Honor. And so those go to a couple of quick points. I know I'm out of time, but a couple of quick points. The original lease sale EA that they say they did not have adequate time was issued on May 13th. Then the protest deadline was August 13th. They had 80-something days to go out and do their site-specific analysis and do all these types of things, and they didn't do it. And so our point on the merits is that I don't think that a 10-day protest period, which is provided by any regulation or statute, when they actually had 80 days, once they knew which leases were going to be leased, they had 80 days to provide that site-specific analysis, if that's what they wanted to do. And, indeed, in their protest, they did do out some parcel-by-parcel analysis. So we think 80 days when you have a parcel list is sufficient time to provide public comments because that's really, in effect, what it was from May 24th to August 13th. Can I ask one other question? Yes, ma'am. You maintain that if you were an indispensable party, the case should be dismissed because there's no jurisdiction over you, personal jurisdiction, but you were the ones who came here, intervened, did not tell anyone that you had any personal jurisdiction problem, went back to the district court. I don't believe you told the district court at that point that you had a personal jurisdiction problem. You did later. And the Roth case in which you rely, there they preserved their personal jurisdiction issue all the way through. You didn't. So I don't see that there's any jurisdictional problem. Oh, I absolutely do. I think that the SEC v. Roth case, I don't think in their motion to intervene, they included a personal jurisdiction argument. The opinion says so. The opinion says they did. The opinion says they preserved it all the way through. Okay. Well, in our case, if I read Rule 12 and 12H, the only way to waive an argument as to personal jurisdiction is to not raise it at the time you issue your. . . Well, that's ordinarily the case, but it ought to be the case when you're affirmatively coming in to intervene and saying I want to make this argument and I want to make this argument, and now you're saying you don't want to be here at all. You want the whole case dismissed. So you were allowed to intervene on the basis that you were going to make various arguments, and now you're telling us you just want to go away, the whole thing should go away. I don't think we're asking for the entire case to be dismissed. I think we're asking for the case against our leases to be dismissed. I think that's a very interesting distinction. That's not what you told the district court or our court. You at least should be judicially stopped from making that argument. But also, ordinarily, you don't. . . If you are asserting personal jurisdiction, you have to assert it from the outset, and you certainly did not. I do not think that's what SCC v. Ross actually stands for. I think if you look at the rule in 12B and you look at 12H and you look at SCC-Ross and you look at Rule 24, Rule 24 doesn't have a requirement that you must raise as part of your motion to intervene every potential argument that you might make. It's a Rule 24 motion to intervene, which at the time, that's what we made. Did you not misrepresent to the district court and to this court what your intent was with regard to the intervention? Because you told them that your intent was to make up a series of arguments that hadn't been made, and now your intent is to just ditch the whole case and leave. I don't think I misrepresented anything to the district court, no. I think that the issue really becomes, under Rule 24 and Rule 12, what do you actually weigh by filing a motion to intervene? The other cases from the Ninth Circuit involving tribes, they said that in order to make a motion to dismiss for lack of personal jurisdiction, you have to first intervene. You can't waive a personal jurisdiction by simply intervening. A non-party cannot seek to be dismissed for lack of personal jurisdiction if it first doesn't intervene, and that's exactly what we did. I think that... Did you want to save time on your... No, I recognize I'm a little... I would like to save time. You're not seeking to dismiss yourself. You're seeking to dismiss the whole case, is what I understand. I'm sorry, I don't understand. You're seeking to dismiss the whole case. Is that not true? The whole case? No. Chesapeake Exploration only has an interest in two reasons. Sure, I'd be perfectly happy to dismiss you, because you intervened and they didn't want you there to begin with. I'm sure Western Indian Alliance would love for us to dismiss the whole case. But I think the important issue there is that every single... But you're not seeking to dismiss the entire case on the ground that you're an indispensable party to the case. No, only those issues that relate to us. And I think every single oil and gas lessee who has a contract with the United States is an indispensable party. And at that point, they will have to make the decision whether or not they want to move the case. But I think that this Court has been very clear that those that have those contracts are indispensable parties that should have been brought into this case in the very early stages. Are you trying to reserve time? I am trying to reserve some time. Otherwise, you can continue on. But if you're trying to reserve... I'm trying to reserve two minutes. So with that, I'll reserve the rest of my time. Thank you, Your Honors. And may it please the Court, Mark Gibson on behalf of the Anschutz Exploration Corporation. I want to talk about what is not in dispute in this case and in the related Montana case. Nobody here disputes the legal premise underlying our Rule 19 argument, which is the central issue presented in our appeal. And that premise is that a district court simply lacks the authority to set aside and vacate the contractual and property rights of an absent third party when that third party is a required party within the meaning of Rule 19. And that rule captures this case because nobody disputes that AEC was not a party to the Phase 1 proceedings and was not a party when the district court set aside my client's leases. So your position is that every one of the lessees was an indispensable party, not just you? Our position is that all of the lessees were required parties within the meaning of Rule 19 because, as this Court has already determined in the intervention appeal, the lessees, including AEC, we have legally protected interests in our rights and our contracts with the government, and those leases are under attack in this case. Does it matter that the intervention panel explicitly made its decision under Rule 24? No, it does not, because what this Court held in Chermolyn v. United States is that the analysis is the same. But they also held that the Rule 19 issue was moot because they made it under Rule 24. In other words, that the intervention was sufficient and that precluded the need to reach the Rule 19 issues, i.e., because you were here now. And you are here now. Here you are. So you can make any arguments you want. So what's the problem? Yeah, a couple problems with that. First of all, I don't think what the Court meant when it said the Rule 19 and due process issues will become moot applied to our challenge to the Phase 1 order, because our fundamental point is that the district court stripped us of our rights at a time when we were not a party to the case. But this is a summary judgment order. You're here now. You're arguing whatever you want to argue about the summary judgment order. It's a de novo review. So what difference does it make whether you made those same arguments in a district court? Well, the argument here is that the district court simply lacked the authority to set aside our leases without us being at the party. And it's not an answer to say... But you had nothing else to say. Even though you have completely agreed with all the arguments already made, you haven't made any new arguments. And not only that, you told the other appellate panel that you were going to make different arguments, but you didn't. So that's at least a change in the facts in terms of they thought that there was something that you were going to add and you didn't in terms of whether you were adequately represented. So it looks like you were adequately represented because you don't have anything to add. Well, Your Honor, I think there are two big problems with that. The first is that the procedural... Consider the procedural journey this case has been on. We came up on appeal. Our argument was that the district court erred in not allowing us to intervene to appeal the court's order. This court reverses and, importantly, sends it back. The mandate from this court said, district court, your instructions are to grant the order. Allow them to move to intervene to appeal. Okay. So it goes back to the mandate. It goes back to the district court, and then it comes back here. At no point in the district court could we have made our arguments about why it was improper to vacate our leases as a party to the case, and we have those arguments. We had no opportunity there consistent with the mandate rule. What are the arguments? The arguments would be it was an abuse of discretion for the court to set aside our leases, and we would put on evidence, evidence of the millions of dollars of investment... But we know that. I mean, it's obvious that you had an economic loss, and whether it was a million dollars or $500,000 doesn't make any difference. But there's more to the story than that. I'm sorry, Your Honor, I didn't mean that. There's more than simply that. We didn't have an opportunity to put on evidence of what our future revenues would be and the loss. An expert witness. We would need expert testimony before the district court to explain the consequences to our company. But the district court in its day order understood that. I mean, it's obvious that this was a major economic impact on the leases. I mean, and whether, again, exactly, whether it's a million or $2 million or $3 million doesn't really make a difference to the conceptual question. And other than that, you have not seen... There's no relevant fact, it seems to me, and there's no... And you have, although you represented that you were going to make other arguments, you didn't. We didn't have that opportunity, Your Honor. The district court... Other arguments, other than this one about the remedy, which that one was made by the association previously. And so you're not making a new argument. You want to add some facts, which are not particularly informative of anything that isn't obvious. So what's your problem? Well, the other evidence, too, would not just be the economics of it. It would be the effects on our company's employees, people who would not have jobs now because they're not going to be able to explore these leases. It's the effects on our vendors and the contracts that we'd have to cancel with them and their employees and the effects on their livelihoods. There is a lot to do in the district court in terms of developing a factual record. Is any of that significantly different from all of the other leaseholders? That is, at bottom, is the problem that Western Watershed did not sue and serve every leaseholder of whether the WEA came in or not? Because as opposed to Chesapeake, as I understood it, you were aware of what was going on. Well, we were aware of the lawsuit. But the fundamental problem is, yes, the lesson to be drawn from this court's cases, particularly the public rights exception cases, go back to Connor v. Burford, DNA Citizens from 2019, this court has consistently over and over again drawn a line. And that line is this. If a company like the Western Watershed wants to, in the words of this court, destroy the legal entitlements of absent third parties, the district court cannot do that unless they are first joined to the case. So if they want to go... You are saying that the failing here was that they should have served and joined every leaseholder. That is the lesson that has been handed down by this court again and again. If you want to go the whole hog, you want to wipe out the property and contractual rights of an absent third party, you need to bring them into the lawsuit. All of the other people in the same situation are not raising the same issue now. There were, I don't know how many, tens, dozens of them. Chesapeake says they never knew about it. But presumably you're in the same position as all the other leaseholders that were in effect represented by WEA. Isn't that right? We are somewhat similarly situated. I mean, we are WEA members, just like a lot of the other lessees are. But we are the only ones who have argued that our interests were not adequately represented. All right, well, let me ask you something. If, in fact, we graduated, we agreed with you, you have no argument about why the case couldn't go forward with you as a party, so what would we do? We would send it back to the district court to make this argument that you're making here? And then he would decide, whatever he decides, what would the upshot be of the fact that you were Rule 19-dependent? The upshot is that we would have the opportunity, consistent with due process and Rule 19, to make our argument about... Do you think that there's a chance in the world that that would change anything, since we all know, we know the district court knows that you're being substantially economically affected? I absolutely do. I think what Your Honor is sort of alluding to is essentially a harmless error argument. Essentially a what? A harmless error argument. Well, kind of, except that you're already here. I mean, if you hadn't been allowed to intervene to appeal, it would be different, but you are here. We are here, but again, I can't put on an expert witness in front of this court. This court is a court of review, not first view. And again, we couldn't have presented this evidence and our testimony and declarations and affidavits in support of why wiping our releases was inappropriate in the district court, consistent with the mandate rule. All the court could do was send the case back to this court, consistent with the instructions to simply grant us our motion to intervene. So WEA, on behalf of all their members, never made this argument? No, and they can't. And this is an important point, because I think one of the reasons that this court agreed with us that our interests were not adequately represented in the intervention appeal was because it recognized that the alliance is not capable of making all of these arguments on behalf of its lessees. Because these are our facts. I'm sorry, when you say all the times, are you saying the alliance is not capable or didn't make the adverse economic impact arguments? They made that in broad strokes, but that's all they could do, because they don't have our unique facts. What about our particular releases? Well, excuse me, didn't you put an affidavit in on the stay motion, you yourself? I mean, not you personally, but your corporation. Didn't you sign a declaration on the stay order about your economic injury? Yes, we submitted a declaration. On behalf of WEA? We submitted a declaration in support of... So you could have done the same thing earlier? Well, that was simply... I mean, I think that declaration was about two pages long, and it was simply... But it had been 10 pages long. You chose to make it two pages long, but... Well, all the Western Energy Alliance wanted from us was a declaration that says our members will suffer economic harm. But again... But why didn't you put more? Because at that point, we had no reason to suspect that this was our chance, that we were being brought into the case of the party and that our leases were going to be wiped out if we weren't a party. Let me ask you, if you wanted to... I'd just see if you're getting your take on the set-aside versus cancellation sort of debate that was going on a little bit earlier. Do you want to weigh in on that? I sure do, and I appreciate that, Chief Judge McGeough. Our view is that it's clear that the district court's order set aside our leases, and I'll provide you the record citations where I think you can see that. If you look at 1AECER, pages 3, 6, and 59, in all of those places, the district court recognizes that granting Western Watersheds motion would lead to lease cancellation. And in fact, on page 59, the district court... Would lead to and do it are two different things. I'm sorry? Lead to and actually do it are two different things. It would lead to it because that was the expectation of what BLM would do, right? But the question is, was that the order? Well, the order says on page 159... Excuse me, 1AEC59. The district court recognized that lease rights, quote, lease rights will be terminated. So I think we're really... But to be fair, I think we're really splitting hairs if we say the district court just vacated the lease sales but not the underlying leases. If that's really true, nothing prevents my client from going out and developing these leases right now. I guess my question, does that impact the standing analysis? Because it seems like that's where we were... At least my impression was what Chesapeake was trying to argue. Does that impact the standing analysis? We have not separately raised a standing challenge like Chesapeake. I think the standing issue is simply... In my view, the standing issue really boils down to have the plaintiffs satisfy their burden to show that their members will be affected by oil and gas exploration development by these leases. But the district court doesn't cancel. District court sets aside. It's the Bureau that would cancel. So I was just having trouble following and I'm trying to remember. I think it was Chesapeake that was really making this argument. And I guess the other question, it seems like that anxious notice of appeal may be timely and Chesapeake's likely... Chesapeake's likely not timely under Federal Rule 4A1B. Can this be cured by Rule 54B in your view? So the Western Watershed Project has floated that idea of, well, we can cure any potential appellate jurisdiction issues by simply going back to the district court, getting a Rule 54B certification, and it comes back here. I don't think that's necessary in this case. Again, at least from AEC's perspective, we did everything we could to preserve our appellate rights. We filed a protective notice of appeal within the 60-day window from appealing the summary judgment order. In my view, the best practical solution is if there are any problems with timeliness, recall the mandate in that case. And then any sort of jurisdictional issues, I think, again, as far as AEC... Sorry, recall the mandate in which case? Recall the mandate in the initial appeal we filed within the 60-day window. To you, but that wouldn't help Western Watersheds. I'm sorry? It wouldn't help Western Watersheds because you did appeal, but they didn't in timeliness, which is timely. I'm sorry. You said Western Watersheds hasn't appealed. I mean Chesapeake. Chesapeake did not appeal timely. You did appeal timely. So withdrawing the mandate would help you, but it wouldn't help them. I don't know. One last question. It is your view that if the remedy remained what it is in the stay order, that is that there can be no surface impacts, but that the lease sales are not otherwise canceled, would that eliminate your problems with regard to the remedy and therefore with regard to the Rule 19 problem? Yes. I mean, that's Connor v. Burford, right? The approach this court took in Connor v. Burford to avoid Rule 19 due process problems of canceling the oil and gas leases of the absent lessees there was exactly that. Send the case back. We're not canceling the leases. The leases remain in place, which is a significant issue. We're simply putting a stay on any surface disturbing activity pending remand to the agency. That is the solution this court devised to avoid the very Rule 19 and due process problems that arose from the District Court wiping out our leases when we weren't a party. Okay. I think the United States comes to this point. Good morning, Your Honors. Daniel Helinen for the United States. We're appearing here as an amicus today in support of reversal of the Phase 1 order. We would urge the court not to reverse on the Rule 19 and due process grounds that the lessees have advanced today and instead to reverse on the grounds we described in our earlier appeal. The court, of course, already has heard argument from the government on all of those issues, so I'll just speak briefly to the Rule 19 and due process issues today. So in these oil and gas leasing cases where there's an environmental challenge to a BLM decision, we think there's a well-established mechanism for lessees to participate in those challenges, and that's through Rule 24. A lessee can assert an entitlement to intervene under Rule 24A, and in this case, that's what happened. We did not oppose Rule 24 intervention, and then this court granted Rule 24 intervention. So we think it's not necessary for this court to address or reach their separate Rule 19 or due process issues. We just didn't actually try to intervene before the judgment in district court, and now it's complaining that it wasn't a party before the district court. So what we granted was an appeal and for future phases, but not with regard to the already finished Phase 1, and that's what we're complaining about. So it's not a whole answer to what they're saying. It's correct that they sought to become a party after the Phase 1 order issued, but we don't think that matters for the purposes of the Rule 19 and due process arguments that have been advanced, which is that Rule 19 provides a separate basis to set aside the Phase 1 order because of a failure to join them earlier, and that's because the only remedy that Rule 19A itself contemplates is joinder of a party, which is what was accomplished through the Rule 24 appeal. How do you really say it's joinder of the party when they didn't get to do things on the merits in the district court? I mean, when you first started talking, well, the way to do is to intervene if they intervened early, and, of course, in Chesapeake's case, they say they had no notice, and people don't disagree with that. So how does that help them? So I think on the process plane, our point is simply that they've been afforded all the process that they requested, which is when they went to this court earlier and asked for intervention under Rule 24 or Rule 19, the court gave them what they wanted, which was... You say they didn't ask for the right thing. Excuse me, Your Honor? That they did not ask for the right thing, that what they really want. Certainly one of the gentlemen was very vociferous about all the evidence they could have presented. Well, so I have two points on that, Your Honor. So the first is that in the earlier appeal where they sought to become a party, they did ask for Rule 19, a party joiner, and this court concluded that it wasn't necessary to reach that because granting the Rule 24 intervention addressed all of their Rule 19 concerns in terms of becoming a party. Again, that must be that you're saying they asked for the wrong thing. They didn't ask to go back and be able to get into the district court proceedings. That's their real gripe, they say now, is, right, the cake's already baked, and they would like to, at least some of them, would like to unbake it, and you're saying they never asked for that? I think what they asked for was an opportunity to participate in this appeal, and that's what the court granted them. That is what you're saying, that they just... their lawyers messed up and didn't ask for the right thing. Well, I think at that point, what they were entitled to ask for was intervention in joinder as a party. I think the question of whether they could have asked for some other relief is sort of separate. Well, one thing, there was a whole time in this discussion in the intervention appeal, and if they had been asked to intervene in the earlier proceedings, they would have had a huge time in this problem. I think we're not trying to fault them for failing to participate earlier. Our point is simply that Rule 19 doesn't afford relief at this stage along the lines of what they're asking for. No, I understand that, but it has something to do with... you're also arguing a law of the case that they've already been determined not to have been adequately represented, they've already been determined to be timely, but they're not timely as to what they're asking for now. You also make a judicial estoppel argument in your brief, which is essentially, again, they didn't... not only didn't ask for this, but they said they didn't want... I don't know if... they were not seeking to undo Phase 1. At least one of them affirmatively said that, and the other one said they were looking to... they were only looking to participate in the appeal and future phases. And so you're arguing that they essentially... even though they had a Rule 19 argument there, they were making a different Rule 19 argument, and now they're switching gears and they can't do that. I see my time has expired, if I... Go ahead. So I think the basic point is that there isn't a Rule 19 remedy at this stage, regardless of whether they had asked for it in the earlier appeal, beyond party joinder, which is what they've already obtained. So we think the earlier appeal granted them the relief that they could pursue under Rule 19. And finally, one last thing. You mentioned the public interest exception, but you're not relying on it, because of the Dainey case. We think the court doesn't need to reach that. As we said in our brief, we think, you know, there are plenty of other reasons for the court not to address it. It's a very important issue to the government, of course, and as we've explained, we disagree with the Dainey care of the Dainey citizens' decision. If the court were to reach the question of how Rule 19 applies in this context, we do think the national licorice line of cases would apply in this context, in the same way that it did in Connor v. Burford. And you would have a major problem if the 400 lessees were indispensable parties in this case? I think that would be problematic, Your Honor. Yes, we agree with that. Thank you, Your Honors. Thank you. May it please the Court. Thank you. Laird Lucas. I'm Lawrence in the pleadings, but everybody calls me Laird Lucas. For the plaintiffs' appellees, Western Watersheds, et al. I appreciate the government's analysis on this issue. We're not on the same page with them all the time, but when it comes to the Rule 19 and the due process arguments, I think they're right. You don't have to get to the public rights exception under national licorice, because under Rule 19A and then B, it doesn't apply. The grant of intervention allows them to participate here. And in the intervention appeals, I think counsel are overstating what the intervention panel held. It squarely held they were entitled to intervene under Rule 24. It also said we're not deciding Rule 19. And counsel for entrance is saying the indispensable party issue is therefore decided as a law of the case. But the Shermoen decision that we both cite says those are parallel inquiries. Under Rule 24 and Rule 19, what makes indispensable, are you adequately represented or not, are parallel inquiries. They're not the exact same. It's not law of the case under Rule 19 here. What was decided was under Rule 24. And this gets to the issue that I think Judge Burson was raising. They told the intervention panel, they told the district court they want to intervene for purposes of appealing the Phase 1 decision and then participating in other phases of the case. They are in in the other phases of the case. There's no question they'll be able to participate. They've filed briefs in other cases. And just to make sure you understand, we have a Phase 2 that's fully resolved and appeals from that are in abeyance waiting for a decision from this panel. We have a Phase 3 decision which is fully briefed and argued in the district court. But the district court stayed that. We have a new magistrate judge who replaced Judge Bush, Judge Petrico. And he's not quite sure of what he's bound by or not bound by. And he didn't want to issue further rulings until we have a ruling from this panel on Phase 1. Let me just back up a little bit because you said that the intervention panel ruled under Rule 24 and not Rule 19. Yes. I want to make sure because we have case law that says they're basically the same. Why isn't that true here? It's because they were looking at the intervention motions at the time they were filed and whether they met Rule 24. For Rule 19, there's further analysis. Rule 19b requires that if you find there's a necessary party who has not been joined, what does that mean? Do you dismiss the case or not? Can you do other things to accommodate their interests? It's not a jurisdictional rule like I think counsel have been asserting. And I think the Merrill Lynch case and other cases we cited in our brief show that. The courts take a pragmatic look at what has happened in litigation. If some party needed under Rule 19 steps forward but didn't come forward before, you look to see can you accommodate their interest or not. It's not like throw it all out. My understanding is that they're arguing that is the adequate representation determination that is law of the case. And that's where it's important because the intervention decision on Chesapeake listed the arguments, the three arguments that Chesapeake had identified that they wanted to raise through intervention. And I don't think they've actually raised those arguments. They've raised additional arguments or different arguments. One thing I'd like to point out with Chesapeake is they have two leases at issue here from the September 2018 Wyoming lease sale. Both went into production before phase one. They say those leases have been canceled and their rights destroyed, but that is flatly untrue. They continue to produce those wells and continue to get revenues from them. Is that because of the stay order? Sorry? Is that because of the stay order? I think it's because BLM has taken no action to cancel any leases. Because of the stay order. I agree, the stay order... All right, so that doesn't solve anything unless we transform the overall remedy into the terms of the stay order. Okay, fair enough. I think that is right. I think that is right. I inquired of your colleagues on the other side here, friends on the other side, regarding the timeliness of the appeals and I'd like to get your views on that. Right, I mean, they filed timely appeals but they weren't intervenors and other panels of this court dismissed those initial appeals. They moved to intervene then after they filed initial appeals and those intervention motions were denied and then reversed and so their notices of appeal after intervention was granted were two years after the decision. Yes, but then we made a mistake, at least with regard to AEC, in dismissing their appeal for lack of standing because under the later decision, in fact, they had to appeal then so we shouldn't have dismissed it. I'm not going to comment on whether another panel of this court did the right thing or not. No, but that's the case. I mean, it can't be that AEC who appealed under, timely under our current case law is going to be left without any opportunity to appeal even though they did it right the first time. That can't be right. I agree. I think the jurisdictional rules are very strict but that's why we have suggested the Rule 54, limited remand, get a 54B certification. Let me ask you something about that because it also ties into the whole jurisdictional question which I must say is somewhat informed by this discussion because the standing, your position on the standing issue as I understand it depends on the fact that the orders were not actually canceling the leases, individual leases. They were vacating or setting aside the leases, the lease fails and going back to BLM. All right. So if that's the posture, then what do we, what is the role of this 54B or how would we do it? I mean, I must say this case has gone on forever. The intervention appeals and this appeal and the other appeals should never have been separated but they were. Then there was a remand to the district court. I'm not even sure why that was. So there's a great reluctance to drag this thing any further but if on the other hand we could clear up both the jurisdictional question with regard to whether there was in fact an injunction here and the timeliness question by having a 54B order issued, could we simply send it back on a limited remand to the district court and tell them to do it in three days or could you guys just stipulate now that you would agree to a 54B order and that we would get it done in three days or something? I think that is definitely a path and we put in our brief along with our case management filings in the district court. We all agreed not to challenge a 54B motion on this phase one decision. But nobody made one. Nobody made one. So willing to tell the court right now, we don't oppose 54B certification. The question is would you make one or could you agree to make one? I don't think it's our job to make a Rule 54B because we're not appealing. They have to do it. Federal government intervenors have to make a Rule 54B motion but we would not oppose it and that's what we stipulated to. So I just want to make sure I understand that assuming that the law of the case does apply, I know you're arguing that Rule 24 is different than Rule 19 but does the fact that the Anschutz party has failed to raise any new arguments really, does it count as a new fact? Yes, I think so. Tell me. You know, I think law of the case looks at decisions when they were made and yes, those remain in place unless there's clearly erroneous or facts of change but as we move through, their intervention on appeal, particularly with the de novo standards of review, means they needed to put forward to this court whatever other arguments they had. They simply adopted the federal defendants and the other intervenors' legal arguments that you heard in the prior argument. Now, Chesapeake has offered different arguments which is what Anschutz could have done but the fact that Anschutz has said nothing except we were a necessary party when they're not, I think that shows that their interests were adequately represented by the Western Energy Alliance and others before and you can make that determination in finding they're not a Rule 19 necessary party. And what about their argument, Anschutz's argument that they want to, well, add to the record the economic adverse impact? So this gets to the question of what did the district court do, what did we ask for? It is very important to bear in mind we challenged lease sales like the Wyoming one that Chesapeake's complained about. 300 lease parcels all over the state of Wyoming, all offered at once, all bought by various parties and now they're in place. If we don't vacate that lease sale, all of those leases remain in place. If you suspend them and say go look again, how can BLM cure its public participation violations here? How can it cure the prioritization violations that we've seen elsewhere? In the other case, that's the key focus. We have those claims too. We have not adjudicated them yet for any of the Phase 1 lease sales. We reserve those under our case management order. So if we got further into this, we could litigate, did the EAs look at cumulative impacts on sage grouse? The cumulative impacts across the state are in key populations as part of our claims. So why isn't the nature of the order on stay sufficient to preserve your interests? In other words, your interests all have to do with what's going on in the surface, not what's going on under the surface. Isn't that right? They access federal minerals from not just federal surface but from private and state lands. I understand that. And so BLM has taken the position it cannot regulate surface disturbance on private wells that are used to access federal minerals. But that's not what this case is about. The stay order certainly makes sure that nothing can go forward with the leases or the lease sales. And that's more than just ground disturbance. What I'm asking you is why isn't the, in terms of what BLM can actually do, the current stay status quo sufficient? I understand that it's not vacating the sales now. But why couldn't BLM go back and have proper participation and proper prioritization in the other case and then look at whether the lease sales should be vacated? The leases themselves should be vacated or not if nothing is being disturbed on the surface in the meanwhile. Certainly as an interim remedy, that's fine. But when you get to what is going to be leased and what will be developed, you need to start with a clean slate because otherwise they're all locked in. That's why they want it so much. They have these leases. But why can't BLM start with a clean slate but leave that as a status quo in the meanwhile? I mean, why are those inconsistent? Why can't BLM go back, do everything over again with regard to participation, prioritization, and everything else, and then decide whether to vacate the leases from scratch or essentially whether there should be leases from scratch while the surface remains untouched? The surface may remain untouched, but the leases are in place. And BLM will have to cancel them. But why isn't that an appropriate way to accommodate the interest here? I understand. I mean, it's sort of a form of not vacating. But on the other hand, it is completely accommodating the environmental interest, as I understand them. I'm not quite sure how to explain the notion that once BLM has made lease decisions and those are in place, it can't go back and take a fresh look as long as those are in place. Why not? Why can't we just tell it? Because people hold the leases. The companies hold the leases. They may not be able to develop them. Is that the, quote, valid existing rights concept? I think certainly an oil and gas lease is a valid existing right. And that's why we've been trying to be very careful to challenge lease sales, which is the big picture view of what are cumulative effects? What are prioritization? How are we going to protect sage-grouse across the state of Wyoming or across the range? That's where they have to take a fresh look at it. That's why a vacater of the lease sales is so important. That's what the court ordered. In response to that, BLM has options to do different things. Canceling the leases is certainly something they should do. They can do that under their regulations and they haven't started yet. The stay has stopped anything from happening. But we need to go ahead and get this case resolved. And if BLM's told these lease sales were wrong and vacated, then it'll have to go through and go through that process. If there's valid existing rights and they can fight back about it, they can do it through that process. Why can't they be told to go for it as if the lease sales are vacated or set aside and start all over again? But in fact, meanwhile, instead of undermining the leases, we're going to make sure that the environmental interests are 100% accommodated. I think if the court were really careful in how it crafted that language, you might be able to. I noticed in Connor v. Burford this morning when I was reviewing it, not only did it say, we're going to reform the remedy and suspend these leases with no service disturbance, but it has further things saying, in future reviews, the Forest Service, the agency there, must take into account these. It can't be prejudiced, take into account prior commitments it made. It must start from a blank slate. It's an act of faith on the part of the court. In terms of, I mean, one of the oddities about this case is that the guidances that were being challenged are not there anymore. So in terms of the future, you don't necessarily have issues with regard to the future, at least not the same issues. And we have cited the new instruction memorandum that's now in place, which actually adds in more protections. If they have leases in place, they won't go through a new leasing process. I understand, but with regard to future leases, in terms of what you were talking about, about Connor, we don't have a problem anymore. But if you imagine the parcels that have been leased, how can you tell BLM to go back and re-evaluate? Do they prioritize? Do they avoid cumulative impacts while the leases are still in place? You just tell them that. And if the instruction is considered to cancel the leases after you do this. Go ahead. I mean, i.e., it was done wrong. You have to start from scratch. But in the meanwhile, we're going to leave this the way it is. I think certainly the court could do that. With respect to Chesapeake and Anschutz, the two leaseholders who have stepped forward and said, hey, we're there. You could reform the remedy for them. Chesapeake said, dismiss our leases. In my mind, the two leases that are already produced and still producing really are not part of our case. They've never asked us to somehow get rid of those. They instead proceeded with all of these appeals. Can I ask another question? Is there any point to having a mediation to try to straighten out? I think. You say you don't really have a problem. No, no. My clients would be happy to see mediation. The problem is it may take a lot longer. We may not get there yet. Everybody's looking for direction from this court. So many issues are presented to you, procedural and legal and substantive. Procedural ones, it appears, are easily solved by a 54B problem. I mean, judgment. And you say there's not going to be any problem getting one entered. I don't know why you guys just shouldn't go, when you're back in the district court, and ask them to enter one. And so if those are cleared up and we're to the merits, basically, I'm just wondering. We have very good mediators. Is there any way to get this moving? I feel we've used the Ninth Circuit Mediation Office many times and done many settlements. Certainly, we're open to that. But I'm afraid that in this case, without guidance on some of the key legal issues, we would just find we still disagree. Like I told you, our phase two is all about other leases in 2017 and how they violate NEPA. Not the public participation stuff here, but did they look at direct adverse cumulative impacts? Did they look at alternatives? We won on that. We have phase three, which has prioritization, the same claim you're hearing in the other case. We have that same claim. There's all of these legal challenges to how these leases were done. And they're all being held up waiting for this court to decide. So I think we need to get this done. Maybe mediation in the future or for other phases. Our phase two appeals are in the Mediation Office right now, but nothing substantively is being talked about. Counsel, the facts are so difficult that I'm having trouble grasping. I had two questions. One, what you just said about the leases are flowing and are being produced, is that because they have no surface impact anymore? Because the parts of the stay are about no surface impact. And I guess I had this idea that that stopped it. Am I just wrong? Thank you, Your Honor. No, the two Chesapeake leases were drilled from private land. They accessed federal minerals as part of a pooling or communitization agreement. That I'm familiar with. And it happened before our phase one thing. So I don't think the stay order from Judge Bush has affected producing wells at all. OK, and so why are you still mad at them? Do you want them to stop producing? We haven't asked for that at all, no. Well, but if they're part of the lease sales and the lease sales are set aside, and it'll lead to canceling. I mean, are you going to go in and say don't cancel their leases? Or would you object? Would you object? I mean, wouldn't that be a mediation settlement? It's fine. We set aside the lease sales for everybody except Chesapeake or people like them. That's why I'm having trouble just practically understanding people argue you don't really want to protect the sage grouse. You just don't want to produce energy. You obviously go the other way on that. And it sounds like, for these folks at least, maybe that is the solution. Well, not only that. I mean, where there are these specific wells that have come up, we have this footnote six protocol under the stay order that we have been working with Western Energy Alliance and others to let them intervene, to grant them relief so that for producing wells, they can keep doing it. We're looking at the vast amount of lands that have not been developed at all. And is that the other thing that floated past me as I wasn't understanding was the first gentleman spoke and said, well, we've looked at it, and there's no sage grouse, there's no habitat on our lands. But yet, when they sold them, everybody thought there were all sage grouse habitat, didn't they? The representation that there's no sage grouse does not go far enough. It is sage grouse habitat, and our claims are not just about sage grouse. His statement was just, we haven't seen any grouse. It's not that grouse wouldn't be happy to be there if they had a chance. That's my understanding. There's an argument. I'm trying to remember now. And I think that it was Mr. Sparks who was saying that you had 80 days to do a certain amount. Can you respond to that 80 days argument? I'm trying to remember exactly what, but I wanted to hear your response. I'm not sure where the 80 days comes from. I think they take into account the sage grouse planning processes that culminated in 2015. We've shown that those broad land use plans don't count for site-specific approvals. When they look at the other periods for the Wyoming September 2018 sale, there was two EAs that covered together like 124 parcels and 120,000 acres. And those had 30-day comment periods. But then when they had the double-up EA, which doubled the amount of things they suddenly added, there was only 14 days comment for that. And then when they packaged them all together, all three, the first time we knew about that was for the proposed sale, and that's what triggered the protest period. And that was just 10 days. So for 2 thirds of the sale, we had a 14-day comment period, which in business days is even less, and then a 10-day comment protest period to look at the whole thing. That's 24 days. I don't know where they come up with the 80 days. So before your time is up, I guess you've highlighted there's some key decisions. There's so much here. I'd like to know from your perspective, you know, how you think this case should come out in terms of the most important issues to the least. I mean, if you can give me just your sense on that. So thank you, Your Honor. We think certainly for the five Phase I sales, you should agree with the district court that public participation was unlawfully curtailed from what BLM previously required. Even though the instruction memorandum is not before you, BLM followed it and applied it and curtailed public involvement. We have additional claims against those sales that have not been adjudicated, NEPA and prioritization, but we accelerated by agreement of all the parties this public participation issue. If you find that public participation was adequate, we still have additional challenges, but I think you could agree with the district court it was not adequate, and that's a fundamental sort of flaw at the outset. So if the sales were fundamentally flawed for lack of participation, they should be set aside under the APA, and that means the consequences that flow, they should be vacated, and the consequences that flow will flow. BLM can cancel them. It can hold new sales. It can do other things, but it is simply vacating these sales and setting them aside. That kind of ruling would then help both our court and the Montana court in figuring out how to go forward with the other challenges we have to other lease sales. The Montana court didn't rule on public participation. No, it did not. It ruled on prioritization. Only on prioritization. So if we were to hypothetically reverse on that and say prioritization was okay, then what, do you come back in with the public participation challenge, or is that sort of the end of Montana? The Montana case before you is solely June 2018 Wyoming. That's one of our five. So whatever you said about prioritization would not, A, would not affect our public participation claims, and we would have other NEPA claims. I understand that the plaintiffs presented NEPA claims. You would have other claims in Montana. In Montana, and those were not adjudicated by the court. Judge Moss stopped with the prioritization. It's like a habeas where you reverse the grant on ground one, you still get to raise two and three. They tried to raise it, but the court being efficient and not going too far didn't decide it. My time is up. Thank you very much. I appreciate that it's very complicated. I ask you to affirm the district court. Thank you. Three minutes. Two minutes. I will try to get through this as quickly as I can. Thank you, Your Honor. And to address, Judge Berzon, your first question on the issue of agency action, on page 10 of our reply brief, we said execution of contracts regarding real property is not an agency decision that qualifies for judicial review as a consummation of agency decision. I know, but you don't get to make new arguments in your reply brief. I understand, but that's an argument we have made to this court, and we stand by that argument. But you didn't. Okay. Go ahead. Can I ask about the 54B question? Will you, if we send it back to the district court and give them 30 days, will you promptly make a 54B motion and the other party will promptly not object and we can deal with the case? I'm sorry. The rule 54B, will you promptly, if we send it back, will you promptly make that motion? I think it's a complicated issue because here we are, five years removed from this lease sale, and I think it would not be a good use of judicial resources and time. We've already all breached all of this. Then you have a major, you have a jurisdictional problem as to whether there was an injunction, number one. And you have a major problem with regard to the timeliness of your appeal. But you don't care. I don't understand the timeliness of our appeal because we did appeal immediately, well, not immediately, within the 60 days of the original summary judgment order. But we have an opinion which, you know, somewhat... Under that analysis, Chesapeake could never appeal. It says definitively that you had to appeal even though you had the synopsis opinion, which says that you had to appeal from the original summary judgment and you didn't do it. We did do it. We appealed to the court. Did it late? No, we didn't. We absolutely appealed within 60 days of the judgment on the summary judgment phase one order. We absolutely did. Well, that's peculiar because everybody else seems to think that you didn't do it within 60 days. No, I think what their argument is that when that appeal was dismissed and then we were granted intervention, our appeal to this court in this case is untimely because we didn't do it 60 days from when we were supposed to have appealed the summary judgment order three years ago. We did appeal that decision. But that's what the synopsis opinion says you had to do. We did appeal that decision. But late. Within 60 days, not within 60 days. Yes, we did. To this court. No, no, no. We filed two appeals in this case. One, we filed three appeals in this case. We appealed the initial summary judgment order just like Anschutz did. When our intervention was denied, we didn't appeal the denial of intervention, and then when intervention was granted by the district court, we filed a third appeal. Okay, but the confusion is over the fact when you say you appealed within 60 days, that appeal was dismissed.  And therefore, if you argue that it was ineffective, then you didn't appeal within 60 days of that when you appealed later. And that's the case law. And I know you're going like this, but that's the case law. I don't think that can legitimately say that we did not do everything that we thought was right to protect our appeal. I don't think that's fair. I don't think that's what the rules are set. Do you have a case to support that? Well, how can we appeal if we're not a party? Okay. All right. Well, except that synopsis said you had to. We were not a party. We already had one appeal dismissed because we were not a party. Did you have a pending motion intervened at that point? Yes. No. It had been denied. Oh, I know. But you had one, and it had been. Yes. Synopsis said you had to do it, and you didn't do it. I don't have the exact dates of when that occurred.  Well, anyway, if I were you, I'd take a look at it, because it affects your 54B. Well, I really don't think that that is. So just let's just assume that you filed late, okay? Let's just assume that. All right. Are you saying you would not file promptly a Rule 54B if it was sent back? If this court were to decide that it lacks jurisdiction and says that we didn't comply, we would immediately file a Rule 54 with it because they said they would not oppose. But I think that's a huge waste of judicial resources. Nobody's arguing that.  I think everybody acknowledges that, but we're just trying to make sure that there's no jurisdiction problems here. Honestly, when the district court told Chesapeake we can no longer develop our leases, that's what the district court has told us. When it issued a summary judgment order and then it stayed its appeal, it said we can no longer develop our leases. You can continue to produce the ones that are producing, but you can no longer develop your leases. That's an injunction. It may not say you're enjoined from developing your leases, but that's what he says. He says no further development of these leases shall take place. In other words, you're enjoined from developing your leases. That's an injunction. That's what the district court did. And when it set aside the lease sales, it set aside our leases, we are no longer allowed to develop our leases. So you're well beyond your time. Two quick points. On the 80 days, it's pretty simple. The original lease sale EA came out on May 24th. They then knew which parcels were going to be up for lease. They had a list of all of them. At that point, they had a list of all of them. Their protest decision was not due until August 13th, 80 days. They knew what was going to be leased. They knew the BLM was going to lease it. They had 80 days to do all of their review to file their protest. It may have been chunked up into EA versus the protest time period, but they had all of that time. I'll also note that in their summary judgment motion, I quote, plaintiffs also seek an order vacating the leases. If they're going to seek that order, if they're going to seek an order vacating a real property in our contracts, we absolutely believe that in Rule 19, we are necessary, we are indispensable, so is every other company that owns a contract that they are seeking to vacate. I'm over my time, but I do appreciate it. Thank you so much. Everybody else is in here too, it's just their lawyers not good enough? Absolutely. Well, some of those companies may not want those leases anymore. Some of those companies, they may have drilled an offsetting well that wasn't very good, but that doesn't change the analysis. They have a legal right to be here. Let me just ask you before you sit down. So how do you – I'm going to ask you the same question that I asked your friend across the aisle here. How do you think we would rule here at this point in terms of the most important issues? Because there's a lot of different issues. What are the key ones, and then what's your suggestion if you were writing the order? If I was writing the order, I would say that we are absolutely a necessary and indispensable party, and the district court needs to do that analysis of our personal jurisdiction argument. And in that case, it would have to join every other entity that owns a real property in a contract that they are trying to vacate. And I can say with some certainty that of the hundreds or the thousands of parties that are involved in this case, very few is their personal jurisdiction in Idaho because there's not a lot of oil and gas there. Has anybody ever done that? I'm sorry? In the many cases that are structurally parallel to this, has any court ever done that? I'm not aware. And then I think even though we believe that BLM complied with NEPA, if this court were to find a violation of the procedural issue with NEPA, we think that the proper action for this court to take would be to remand the decision to lease, and only the decision to lease, to BLM to say, give them 30 days to comment, give them 30 days to protest, and issue a new decision based on any information they have. If you want to then add more mitigation measures to the lease, if you want to do something else to the leases, that is your opportunity. Because under the applicable resource management plans, all of these lands are open to lease. It's just a matter of under what conditions and under what stipulation will be applied to those leases. And that's where BLM could take what they have and maybe amend those leases. At that point, if they amend the leases, companies like Chesapeake will have to make a decision whether or not we want to accept those or then relinquish our leases at that point. And your view on mediation? That's not something that we have discussed internally. Our leases, some of them have been developed, some have not. Would we have any objection to mediating with the plaintiffs? Obviously not. What do you mean some have been developed and some have not? So we have leases... Ones that you already hold? So we have leases in Phase 1 here. We have leases in Phase 3. All right, but as to that, the governing guidances have been changed so the issues don't arise. I'm not sure I understand. In other words, I thought the 2018 guidance that was the underlying problem here with regard to the changes in public participation is no longer at stand. So as to anything happening in the future, the issues are different. In the interim, I think that what the district court should have done is just you do a suspension of service-disturbing activities. That's it. I'm sorry, what? You do a suspension of service-disturbing activities. That's a different question. You keep saying... I mean, all of a sudden, you said you're concerned about future leases, but they're not going to be done under the same procedures. The procedures have changed, correct? For leasing under the IM? I believe so. Yeah. So I think on remand, if we're just going to vacate the leasing decision, on remand, give them 30 days to comment if they have additional information that they can provide, they should provide it to BLM, and BLM will take that into consideration and issue a new decision. In the interim, BLM just, at what it's doing now, doesn't authorize any service-disturbing activities. And if companies like Chesapeake want to go drill horizontal wells underneath these leases... Your opponent said that's okay with him as long as it's clear that BLM has to start from scratch as if there never were a lease given to begin with. So why can't you guys just agree to this? I think we have a fundamental problem with the district court and the plaintiffs seeking to cancel or validate existing lease rights. That's a difficult thing for Chesapeake to accept. And if that's the position they're going to take, we will agree immediately. Then we go back to, I mean, it seems to me that all the district court is doing is setting aside, it's the Bureau, whether or not they cancel or not. But that's the problem you have, that the Bureau might cancel in light of the fact that the district court sets it aside. I don't see the dispute. I think the district court said the leases are canceled. That's what the district court said. Well, the district court, if you can show me where the district court says canceled versus set aside, because I do think there is a distinction. It's in the state order. It's also in the order denying intervention. The state order was not the order. The state order may have characterized the order, but it wasn't the order. We appealed all the orders. We appealed not just the Sunday Judge order. The state order was only describing what had been the order, but the order speaks for itself. It says whatever it says. I do not disagree with that, Your Honor. All right, good. Thank you. I think the plan was that Mr. Sparks was going to take all the rebuttal in Idaho. So should we pivot to Montana? OK, we can do that.  Mike, you're up. Second half. Yeah. That's fine.  So this is the second case, but I just want to recognize that we've covered a lot of ground here. So if we could keep this short as possible, that would be great. OK. 15, but per the judge's order, I'll try to keep this concise. Thanks. You may begin. OK, thank you, Your Honor. So just like the Idaho case, Chief Judge McGray, you were asking the other counsel, what's the focus? What's the most important piece? And from Anschutz's perspective, the most important piece for us is getting this Rule 19 issue solved, because we think that both the district courts and all of the parties participating in these cases, the government, the plaintiffs groups, and the lessees, we all need guidance on what relief is available in a situation like this, where you have plaintiffs who sue only the federal government, but they're asking for a remedy that threatens to destroy the legal entitlements of absent third parties. Is that relief on the table, or is it not under Rule 19? And in our view, this court should come down, and it already has come down time and time again, in cases like Kettle Range, the Colusa Indian community, that the answer to that question is no. That is a bridge too far. If you want to wipe out the leases of absent third parties, unless you can show that they are adequately represented by some existing party, then they are required parties who need to be joined before you can support them. So are you now arguing on behalf of all the other lessees other than yourself? I mean, you are here. You made your argument. I mean, I understand you say you want to put something on the district court. But whatever you want to put on the district court doesn't seem to illuminate much of anything. And so your concern is with the other parties that have an orange here? Is that what you're concerned about? Well, we do have a structural concern. And again, Judge Berzon, I think we fundamentally disagree about whether Anschutz has something to add on remand. Again, there was no remand. We didn't have an opportunity to put on our evidence. And we couldn't have. One, because of the mandate rule. The district court's instructions were not to reopen phase one, hear from Anschutz or the other lessees, and then make a new decision. Did you, in this case, tell the intervention panel that you weren't seeking to reopen phase one? We did. And importantly, here is what we have consistently said. And we said the same thing to the district court. We were not seeking to intervene to appeal. Excuse me. We were not seeking intervene to reopen phase one. But now you are. No, we're not. Because again, our principal argument is in sort of the hierarchy of what we hope that the court orders in terms of relief and the disposition of the opinion. One is just an order that says, the district court erred in setting aside these leases at a time when AEC was a required party whose interests were not adequately represented. Full stop. We were manned to the district court to fashion an alternative remedy. That's what we want. That's reopening phase one. All the district court would do then is exactly what would probably happen under Connor versus Burford. But it is reopening phase one. And you already told this court that you're not trying to reopen phase one. So why aren't you just judicially a stop from this whole argument? Well, we told the district court and this court that we were not at that point seeking to jump into phase one and disturb what had already been issued in that order.  But we did want to appeal. And of course, if you're appealing that order, you're of course appealing because you want to disturb that ruling. And that is exactly what we're seeking here. I don't think there's any inconsistency with us telling the district court, court, we're not asking you to unwind your phase one ruling right now. Let us jump in. Let us make all of the arguments, even though you've already entered your order. We never said that. But we did say we disagree. And we would like the right to appeal to challenge your order and get it reversed and get it fixed. And this court said, yes, you have a right to do that. And that's all we're seeking here. This is simply the culmination of the entire argument we've been making all along, which is the district court could not set aside our leases when we weren't parties to the case. And if it really wants to do that, then that's correct, even if you're making the same arguments, say, on prioritization. I'm sorry? Your statement that they can't affect it and you want to appeal, I'm saying your position is that that's your position, even if you are not making any arguments that were not already made in the district court. But again, we are making, we will be making your argument. But your legal position is that you should still win, even if you weren't. That's correct, because we think, consistent with what this court has said, again, in Kettle Range, Colusa Indian Community, the district court just did not have the power to do what it did. That was error, regardless of what other arguments we might make. OK, but if you are correct on that as to yourself, do you agree that that doesn't necessarily, or at all, upset what they did to anybody else, Chevron or Exxon or whoever? Well, two responses to that, Judge Boggs. The first is, we obviously can't take a position on behalf of the other lessees. I understand that, of course, the scope of what we're arguing here has implications for the other lessees. And that is absolutely true. And that is why we think, structurally, this is an important case. And of course, for this case, I would think that they would have waived all of that way back. You at least jumped in first chance, or sort of first chance you got, I doubt. Now, for the future law, that might make a difference. Perhaps. But again, I think it really depends. I mean, it depends on why those lessees have not been involved. Perhaps they just are not aware of the lawsuit. I thought, ordinarily, with regard to a Rule 19 issue, that the parties are the ones who would bring forward to the court the notion that there are other parties that should be present. So as now a party, I think you could do that. In fact, the whole structure of Rule 19 is a little odd, because if that's not the case, is the district court just supposed to look around and say, oh, maybe there's some parties out there. And somebody has to be able to tell them. And since it's not necessarily going to be the absent parties, it's more likely to be the present parties. That is absolutely correct, Judge Berzon. And I think, in our view, here's how this should go. And this is not just me talking. This is Rule 19 talking. What Rule 19 says is there's two layers of defense here for absent parties, such as Anschutz. One is the plaintiffs. The plaintiffs are the masters of their own complaint. And again, I think consistent with this court's case law and Rule 19, they have a choice of how they structure their lawsuit. And they can do it one of two ways. If they truly want to do what they did here, go the whole hog, destroy the lease rights of the absent third parties, then what Rule 19 says is, yes, you've got to bring them in. They need to be named as parties if you want that kind of relief. And Rule 19 also provides a backstop. I mean, you referenced the district court. Rule 19 also has a provision that says the district court on its own can bring in absent parties. And that's consistent with what this court said in McCowan v. Jameson, where this court took up the absent party problem, sua sponte, on appeal, because it's that important, because it implicates the rights of people who aren't even in the litigation. So I'm going to ask what I asked your colleague before, is do you know of any case of the many in which leases were at issue, in which a district court joined all the lessees, or in which the lessees, the case was eliminated because some lessee wasn't available? I have cases on both of those fronts, yes, Your Honor. So, for example, one of the cases that the Federation has cited, the Bob Marshall Alliance v. Lujan case, all 11 lessees in that case were named defendants in the case. By the plaintiffs, but I'm asking if they weren't. I mean, here there are hundreds. I assume that's not all that unusual. I don't know that. It would be entirely unwieldy, and it doesn't seem to. I mean, what's disturbing here is that we had an association that asserted that it was asserting the interests of all of these lessees, including you. And you were clearly actively enough involved that you filed a declaration on the stay order. So it's not that you were being sandbagged in some fashion. But it would be entirely unwieldy for the most part, even if they were joinable. In most instances, they wouldn't be joinable. I understand that your colleague was not arguing the whole case goes away, although I thought he was arguing the whole case goes away. So does the case only go away with regard to those lessees that happened to show up, or what? Well, I think the implication of what we're arguing is that these huge, sprawling cases become very difficult to prosecute. Well, it was only a huge, sprawling case because that's the way BLMA operated. It issued and determined 150 or something leases at once. But in this case is a good example. They challenged, for example, the June 2018 lease sale in Wyoming. All of the lessees who participated in that lease sale, I believe, are subject to personal jurisdiction in Wyoming. They could have brought this exact lawsuit in Wyoming, and we wouldn't have any of these problems of joining the lessees. Now, as to numerosity, there's, of course, a procedural mechanism baked into the federal rules. It's Rule 23. Certify a defendant class if you insist on doing these huge, sprawling cases, or be more targeted. Of course, they weren't asking the defendants to do anything. They weren't asking you to do anything. No, but they were seeking to eviscerate our rights. And in that situation, if they really want that relief, again, I keep coming back to the two cases that I would just beg you to read, Kettle Range Group versus BLM and the Colusa Indian Community case that we've cited in our brief. In both of those cases, and this is the point that the government raised that I fundamentally disagree with, the government says, in cases like this, problem solved. Because under Rule 19, the only relief that they're entitled to is to be made a party. That is not accurate. And I'm going to read a passage from the Colusa Indians Community case. So this is 547F3rd, 962, page 977. The court, this court, said this was a case involving challenges to contractual licenses that had been issued to absent tribes. Which case is this? This is, I'm sorry, this is the, and I'm going to butcher the pronunciation, I apologize, the Cahill-Dahey Band of Winton Indians of the Colusa Indian Community. And again, it's 547F3rd, 962. And on page 977, there was a challenge to these licenses, these contracts that had already been issued. And this court said, quote, we have already made clear Rule 19 necessarily confines the relief that may be granted on Colusa's claims to remedies that do not invalidate the licenses that have already been issued. This idea that all Rule 19 does is say who can and can't be a party, and that it has no substantive bite in terms of what relief the district court can authorize is fundamentally inconsistent with this court judgment. I don't understand that. If you had been joined at the outset in the district court before the phase one determination, then that can't be right. I mean, you would have been part of the litigation about phase one and you would have been bound by the judgment about it. That's absolutely right, but that's not what happened here. I know, but so what you just read me is incorrect. I mean, your problem is that you weren't in the district court, but if you had been in the district court, it would have been fine. Right, but that is exactly what happened in Colusa Indians. Just like us, these absent contracting parties, their contracts are being challenged to be set aside. But what that means is that at worst, at worst, we go to the district court and we tell them, all right, here are their evidence and decide again. Right, and that is the fundamental interest that's protected by Rule 19 and due process is that you are entitled to be heard before a court deprives you of your property interests. That is fundamentally what went wrong in the district court here. We were never heard and we have never had the opportunity to be heard, and that's what we're seeking here. But if your interests were represented, do you still have that adequately represented? Do you still have that right? No, no, so this court has also recognized that this Rule 19 argument, what I just read, this rule that you can't set aside the contract rights of an absent third party if they're a required party. If your interests are already adequately represented, then you're not a required party and we're outside the scope of this rule. But on adequate representation, the work for this panel has already been done for it. Well, except for the fact that you told the prior panel that you were going to make specific other arguments that you never made. And Judge Berzon, I'm sorry we keep walking horns on this, but we have never had that opportunity. We couldn't make the new arguments. You make them here, except for, I understand your evidence argument, but other than that, here you are, make whatever, you could have made whatever arguments you wanted to make, and you said I don't have any new arguments, I'm just accepting the ones already made. But that was the, we have focused on the remedy, and the argument there is that we are in time. Even though you told the earlier panel that you had new merits arguments and said what they were, you didn't make them. We said we had, we told the district court that we, well, let me just, I think it's very important to understand what the question is under this court's adequate representation test. I'm really focusing on the law of the case question. You say they already made the determination, but they made a determination based on a set of representations about what the factual underpinnings were, i.e. you had other arguments that hadn't been made by your purported representative, but then you never made those arguments. They, no, no, no, the panel said you are not adequately represented because the question under adequate representation, the first factor, that's what we're talking about, is has the alliance, will the alliance undoubtedly make all of the arguments you want to make? And didn't they? They did not. They did not raise our due process argument. They did not raise our Rule 19 argument. And they couldn't have made the arguments we want to make on remand about the unique harms that Anschutz and only Anschutz will suffer if the court wipes out our leases. Let me ask you, what do we do about the fact that Anschutz chose not to intervene? I think, and you can correct me if I'm wrong, that Anschutz knew of the case since 2018, and I think, and this was referenced before, even assisted the alliance to some extent during the litigation of the suit and is now only moving to intervene. I'm trying to understand that, especially in light of the equities, you know, why is it equitable for Anschutz to stay on the sideline and only come in after the adverse judgment has been rendered? So, again, I think that the law of the case doctrine handles this for you because it really goes to timeliness, and the two issues before this court in the intervention appeal were, were we timely or did we... Well, yes, you were timely as to the appeal and you were timely as to any future phases, but they never considered whether you were timely as to phase one, and I'm sure they would have said no. Well, then we have no remedy. There's nothing we can do. Yes, you did. You could have intervened at the beginning. But I'm saying if we were allowed to intervene to appeal to challenge the district court's order, but the ruling from this court is, but you waited too long, so we're not going to let you raise any new arguments on the appeal, we're not going to let you raise any new arguments in the district court, sorry. No, we're going to say that the equities with regard to Rule 19 are that you could have solved the problem on your own, and you waited until you had an adverse judgment and we shouldn't reopen what already occurred, and there is case law support for the proposition that what happens if you don't, this doesn't come up until the appeal and the judgment. There's no doubt that the court had jurisdiction to do what it did between the parties, and that Rule 19 doesn't affect that. So the question is whether you get to sit on the sidelines, not make a motion to intervene, and then come in later and we say, fine, you can come in for purposes of the appeal, and then you say, well, you show up now and you say, no, we want to do the whole first phase over again. We don't want to do the whole first phase over again, and again, I think it's very important to understand. Well, you want to do the remedy part over again. We want an opportunity to be heard before we're stripped of our rights. But you could have done it just by coming in at the beginning. But that is not our burden. Again, Rule 19 is what allocates the burden here. And under Rule 19, the onus is on the plaintiffs to identify absent third parties who may be affected by their lawsuit and bring them into the case. And absent the plaintiffs failing, the district court needs to be on the lookout for this. So the idea that we had to affirmatively jump into this case to preserve our rights, particularly in a time where, again, Conner v. Burford, the law in this circuit is that if you're an absent oil and gas lessee, like we were, then you cannot go the whole hog and wipe out our leases. So the risk to us, at worst, was that there would be a no surface disturbing activity provision put in place, pending remand to the agency. But what shook us and made us jump into the case immediately was when that didn't happen. Instead, we get a letter from the BLM that says, your leases are now canceled. That is what matters in this case. Is there a letter from BLM saying your leases are now canceled? Yeah, that's what all the lessees get whenever the orders come down. They didn't have any proceedings to do that? Sorry? They had no process for that? They just wrote you a letter? Well, the BLM will send out a letter to all of its lessees once it receives an order like this saying, pursuant to this court's order, the leases are set aside. Is a copy of that in the records? I don't believe there's a copy of the BLM letters. Right now, the last four seconds ago, you said set aside as opposed to cancel. There's some discussion as to whether that's the difference. Would the letter say set aside? I apologize. I can understand this. When the letter goes out, what is it? Here's a copy of the court order. Does it say there's a court order that now affects our lease sale? It makes sense that they would do something like that, but is that what you're saying actually happened? I believe that's actually what happened, and I can't remember if the BLM letter has an appendix that has the actual decision. I don't think so. You're well beyond time. I apologize. Thank you. Let me ask a quick factual question. Do you know these 159 or so leases, how many different people are involved? Are there really hundreds or are there only tens or dozens? Many of the lessees hold more than one lease, so it's not the same number, but I don't have the actual number of lessees. I'm going to make my apologies here. I'll just be very brief in light of the earlier argument. On Chief Judge McGeeh's question about sort of what's the most important feature and what to focus on in resolving the case, I think if the court looks at Connor v. Burford, the remedy that the court ordered in that case would address many of the issues that have been discussed here today. In Connor v. Burford, the court concluded that it was appropriate to modify a district court judgment to suspend leases along the lines of what we have argued in our parallel case under the allied signal test. And what the court said in Connor v. Burford is that that kind of remedy doesn't implicate any Rule 19 concerns, because under the public rights exception, the usual rules of joinder don't apply. So we think it makes sense for the court to issue that kind of remedy. But we would also have to, BLM would have to begin from scratch, essentially. Yes, Your Honor. I think in our case, we've argued for reversal on other grounds. So if the court declines to reverse on those grounds, we think then a remand without vacater is appropriate as a way. A remand, I'm sorry? A remand without vacater of the BLM leasing decision is appropriate. That's what the court ordered in Connor v. Burford, essentially. It's called a remand of? Without vacater. But a remand meaning as if it had been vacated, i.e., from scratch. The court could remand the leasing decision to BLM with the kind of suspension of operations that is currently in place. I understand that, but I'm asking what the objection is, that BLM would then simply be doctoring up what it already decided. Yes, Your Honor. Because it's without vacater, it would not threaten the integrity of the leases themselves. I don't have the site at my fingertips, because I was on a case here two years ago on Roundup, the Lyo Fuss fate, and the court, we did, in fact, remand without vacater over objections. So that is a process. Yes, and just to your earlier question, Your Honor, about I think Mr. Lucas referenced language in Connor v. Burford. The court said, any future environmental analysis by the federal agencies shall not take into consideration the commitments embodied in the leases already sold. So we would do that anyway, but I think that is kind of. What about the 54B question? Would you make a motion? I need a live body who would make a motion. I haven't got one yet. For our parallel appeals? I'm sorry? For our parallel appeals? Yes. Would you make a 54B motion? So I think in our appeal, we asserted jurisdiction as a right, because we think we're entitled to jurisdiction. I understand that. But it might be just particularly about all these, with all this discussion about what the orders actually did. I mean, for some purposes, you and others are arguing that it really didn't eliminate the leases themselves, and so it's not. I mean, the more one thinks about that, it seems to me that the district court did not really order BLM to do anything. It itself vacated. First of all, in this case, the order, the actual order, although the discussion says that he assumes he was setting aside the lease sales, the actual order just says that it's essentially a declaratory judgment. It just says that there was a violation, and that's all it says. It doesn't actually do anything. And aside from that, there was, you know, it's at least a close question, in the sense that there was no actual order to vacate the leases or order to refund money or anything to BLM. It was the district court that at most, and here I don't think it said that, that the lease sales are set aside sort of by itself. It's not ordering BLM to do anything. So if, in fact, BLM didn't end up vacating the leases and refunding the money and so on, and it came back, and somebody tried to hold you in contempt, what would you say? You'd say you didn't order us to do anything, probably. And maybe at that point he would order you to do something, but at this point it's at least questionable. And it would be nice to have it cleared up, but if nobody's going to make a motion, we're going to be stuck with this. My time is up. May I just respond briefly? So I think on the Rule 54B question, I think the important thing is that we don't think our appeal should be subject to any sort of conditions. If there was an unconditional procedure to have the 54B certified, I think that would be one thing. But I also think if the court were to issue this sort of remedy in Conner v. Burford, that would also address this question about clarity in the district court's decision. In Conner v. Burford, the court was looking at a very similar— Your answer is you're not going to make it. If we remanded the district court, you won't make a 54B motion, just to clear this up. If the court remanded for that— Just for that purpose. If there was an unconditional agreement, as in us moving for a 54B certification wouldn't be conditioned on any sort of agreement between the parties about other issues. I don't think there are any conditions. My understanding is everybody says that they will do this. Well, we'll find out. All right. Thank you. Thank you, Your Honor. Good morning. May it please the court. Michael Freeman, appearing on behalf of the athletes. I'd like to address three points today. First, Anschutz was not a required party in this case because its trade association, Western Energy Alliance, adequately represented Anschutz's interest in the district court. Second,  Anschutz's arguments to the contrary, based on law of the case, are meritless. And third, the district court did not abuse its discretion in choosing to vacate the leases on summary judgment. First— Vacate the leases or the lease sale? The leases, Your Honor. It's clear from the record here— Where is it clear from the record? Could you show me that? My understanding is that in this case, they didn't even make the order on summary judgment. What does the order on summary judgment say? The order on summary judgment— Order. It is therefore ordered what? So the order said two things here that I think bear on this question,  It said, the lease sales are vacated. Where does it say that? What does the order say? The order says lease sales are vacated at Anschutz's extradition record, volume one, pages 30 to 32. And as part of that, it said, the court recognizes that this vacature will require a refund of monies, the monies that the lessee has paid. It will do that, and it will do that. I think the controversy is that the, quote, order after the words, it is ordered, appears only on page 32. Now, it's true on page 31, it says, we will vacate the lease sales in their entirety. But is there a difference between those two? There's not, Your Honor. I think there's an important point that's come up a couple of times this morning, which is that the decision to hold the lease sales included and incorporated the issuance of the leases. This is what I'm saying. Order. It is ordered as follows. Accordingly, it is ordered. Plaintiff's motion for summary judgment is granted in part. Plaintiff's claims of the 2018 IM and lease sales violated the Flitner are granted. That is it. It doesn't order anything. But in the prior page, Your Honor, the court said, when it addressed remedy, that the leases themselves, the lease sales will be vacated. Well, I know, but he didn't do it. I'm sorry? But then he didn't do it. Then, Your Honor, I'd point out that there was some ambiguity in the order itself. That got cleared up on the order staying the remedy payment. Oh, but he didn't revise his order. Well, it was referred to it, but he didn't revise it. What the order for stay in appeal spoke in the past tense, which said my order vacated both the lease sales. They accepted it. Yeah. And I also note, Your Honor, that all the parties here agree that the leases were vacated. Anschutz agrees that that's what happened? No, they don't. I mean, they agree that the lease sales were vacated. But I'm saying that even that wasn't true. Well, I think, Your Honor, everyone below, including the district court, understood that that order served to vacate the leases, and they've all proceeded accordingly. Well, do you think there's any doubt that if BLM hadn't done it and you had filed a contempt motion, that they wouldn't have come back and said nobody orders to do it? Because they didn't. Nobody did order them to do it. No, Your Honor. Contempt's really not an issue here. I think this is an important point on the jurisdictional issue in the remedy here, is that the district court didn't order BLM to do anything. The district court itself vacated the leases, and had BLM simply done nothing here, there'd be no question of contempt. It wasn't an injunction. The action was taken by the district court, and everyone understood that the district court order was intended to wipe out the leases as well as vacate the lease sale decision. Does that give you at least some little bit of a problem of vacating the leases of people that are not before the court and have had no notice? No, Your Honor, because all the lessees had notice. I think that's a key point here. Chesapeake had a declaration that people hadn't challenged that. Your Honor, Chesapeake's not a party. It was not a lessee in our case here. But at least in principle, they have the same, I recognize you're a different party, but in terms of the legal ball of wax that we're trying to sort here. Is that a problem? Not in this case, Your Honor. And I think this is an important distinction between our case and the Western Watershed Project cases. We gave every lessee notice at the outset of this case that we were suing and that we were seeking vacature of the leases. You gave notice by joining them or by letter? We sent a letter to all the lessees. Is that in the record? It is in the record, Your Honor. We've cited it in our brief. So it actually doesn't dispute that. They've acknowledged they were aware of this case from the outset and did not deny that we sent them a letter. We sent all the lessees a letter saying, here's what we're doing and here's what's at stake. And I think that that's really critical to the Rule 19 issue here because Was there a reason that you didn't join them explicitly or didn't sue in Wyoming and you would have no trouble getting jurisdiction over them? Well, Your Honor, there's been no dispute over jurisdiction or personal jurisdiction in this case. Andrews has not questioned that the Montana court has personal jurisdiction over Andrews as well as the other parties. We brought the suit in Montana because that's where several of the plaintiffs were based. And recall that this lawsuit involved lease sales not just in Wyoming but also in Montana. So we brought the case in Montana, which is where some of the lease sales had occurred and where the plaintiffs were based. But I note, Judge Berzahn, that I think there's an important point here on the remedy, on what the remedy was that the district court ordered, which is that all the parties have agreed and understood that the order here, the summary judgment order, served to vacate the leases and that was not... First of all, it didn't. Second of all, my understanding is that the agreement is that they vacated the lease sales. But, Your Honor, the lease sale decision, the decision that actually adopted the lease sales incorporated the issuance of the leases. And I would point out, this is... What the decision that was vacated said is, my decision, this is BLM speaking, my decision is to offer and subsequently issue, should a successful bid be received, 159 lease parcels. And that's in Western Energy Alliance's appendix in the main appeal at page ER72. So the point here is that the lease sale decisions that were at issue incorporated issuance of leases. It wasn't a separate action, it wasn't... And so by vacating the lease sale decisions, the district court not only vacated the decision document for the lease sales, it also served to vacate the leases themselves. And that's exactly what everyone involved here understood to be the case. BLM understood it, the lessees understood it, the insurance understood it, because they all moved for a stay pending appeal because they knew in the absence of a stay, those leases were going to go away. And the district court itself understood that to be the case. It said in its stay order, my summary judgment ruling vacated or satisfied the leases. I asked you the remedy question to ask the same question I asked you, your predecessor plaintiff. If the judgment were to essentially parallel to the stay orders, so that there could be no interference with the surface of the land, and that BLM has to start all over again with regard to the prioritization issue, would you have a problem with that? There's actually a very major problem with that. And I think the issue here is not just what happens on the ground while BLM is reconsidering its lease sale decision. The longer term issue, and the longer term issue for the sage-grouse is what that new decision looks like. Of course that's true, and of course you'd get to appeal that if you didn't like it. But as a remedy for... What I don't understand is, since your concern is with the surface, i.e., with what's going to happen to the sage-grouse, then why aren't your interests completely accommodated by such an order? The reason, Your Honor, is that the mere presence of those existing leases will make it highly unlikely that BLM would actually cancel any leases... But then you're just questioning their good judgment. I mean, their good faith. And that could be true even if we vacate them. They could still act in bad faith. Your Honor, the assumption of agency good faith applies only in the absence of evidence to the contrary. And what the record here shows... But why would it be any different if we did vacate the leases? You'd still have the same problem. We actually know we don't, Your Honor, respectfully, because what the record shows is that in a similar context of NEPA cases, when courts have remanded NEPA lawsuits without vacating the leases and let BLM make a new decision, in 50 years of litigation, BLM has never canceled a lease. What about when they have vacated the decisions? It's still 90%, I'm sure, or 95% or 99% likely to come up with the same decision. Your Honor, I don't have records on that. Sometimes it is, sometimes it's not. I don't know if that's sometimes it is. And also, of course, you're dealing with different presidential administrations, and they have retracted their earlier prioritization ruling and have a new one, so who knows? Your Honor, the point here, though, is that leaving those leases in place has a very significant... And the record shows this major impact in what the decision that BLM makes... I'm sorry, how does the record show that? We submitted an affidavit, we submitted a FOIA to BLM, asked them for every example... I understand, but I'm asking you, what if you had looked at the ones where they did vacate the decision? Yeah, our point is, though, that it was not an abuse of discretion for the district court to say, I want to give BLM a clean slate on remand so that it can make its prioritization decision anew without having that new decision be distorted or impacted by the existing leases, which will, our point is, and the evidence shows this, inevitably lead BLM to not choose to cancel leases even where it's called for but need to protect important habitat because the industry will be pushing them not to cancel the leases... And they're not going to be doing that anyway? I'm sorry? They're not going to be doing that anyway? But it's a much different scenario, Your Honor, where there's no lease in place, and that's what the record evidence here shows. I'd also point out, Your Honor, that the standard of review here is abuse of discretion, and it was not an abuse of discretion, given these facts, for the district court to choose to vacate these leases, which is what the court did. Turning to the Rule 19 issues, though, it's, you know, the point of Rule 19 is for potentially affected parties to be able to join the case so they can have their day in court. But Andrews has been made a party and he's had every opportunity to raise whatever arguments he wants, both in this appeal and in the district court, but despite repeated opportunities, Anschutz has failed to offer anything new beyond what the existing parties have raised. Because he wants to put on some evidence. Yeah. You know, it had that opportunity on remand from the intervention panel. The intervention panel simply remanded without any specific directions on granting intervention. We offered Anschutz the opportunity in the district court to put on whatever arguments or evidence it wanted. We said, make your case to the district court, and had Anschutz actually had anything meritorious to add, whether new expert test affidavits or new arguments, he could have done so to the district court. We don't know if he could have done so because we don't know the district court would have allowed him to do so. I'm sorry? We don't know the district court would have allowed it. I mean, the district court thought all it was doing was sort of ministerially allowing the interventions. I even wonder why it was ever remanded, but that's another question. We raised the issue. Anschutz actually could have agreed to do it and worked with us to ask the district court to relent the evidence. You said we offered them the opportunity. You're not the court. So how did you offer them the opportunity? By letter or by filing? Is there something in the record we could look at? The intervention panel remanded the case, and it didn't say we remand with instructions to grant intervention. It said we remand with directions to proceed in accordance with this opinion. But meanwhile, the merits case was pending here. That's correct. In terms of the rule of mandate, the district court presumably thought that it didn't have the authority to address the merits of the case. What we suggested, Your Honor, was an approach that would not have required it to revisit the summary judgment. Or what we were proposing is Anschutz could present whatever arguments or evidence it wanted in supplemental briefing to the district court. Had Anschutz actually offered anything meritorious or persuaded the district court that it was improper or that its leases should not have been vacated, the district court could have accommodated that by modifying the stay order. Would that not have been the district court acting in absence of jurisdiction if the case were on appeal? No, Your Honor. Because the order on appeal, the summary judgment, didn't say anything about Anschutz's leases. What we could have done is the district court could have said, look, I'm going to modify the stay order so that whatever happens in the Ninth Circuit on remand, Anschutz's leases are not being vacated. That would have solved Anschutz's problem and it would have made this appeal unnecessary. Anschutz wasn't even willing to do it. Anschutz could have agreed with us and said, district court, let us make our case to you. It not only failed to do that, it actually opposed our request for it to make its arguments to the district court. And so I think it's had its chance for a day in court and still proceeded to just offer nothing beyond what the existing parties have already argued. And those proceedings are all in the district court record or any of them before? We've cited them in a brief and it's in the record, Your Honor. Thank you. Turning to the law of the case issue, I think the law of the case argument fails for two reasons. First, the law of the case only applies to the issues that the intervention panel here actually decided. And the intervention panel ruling did not decide whether Anschutz was adequately represented in the district court. It only addressed adequacy at the appeal stage. And the reason for that is that's what Anschutz asked for. It didn't ask to intervene in the district court. It sought intervention on appeal. And the intervention panel's ruling expressly says when it talks about adequacy that it is allowing Anschutz to intervene for purposes of appeal, not in the district court. In fact, in so doing, it didn't say anything about the Rule 19 issue or adequacy in the district court. In fact, just the opposite. Right after it finds adequacy for purposes of appeal or inadequacy for purposes of appeal and lets Anschutz intervene, it says, given this ruling, there's no need for us to address any of the other issues presented by this appeal. And those other issues are the Rule 19 question and inadequacy in the district court. The second flaw of the law of the case argument is that courts don't apply law of the case where there's new circumstances or new evidence. And that's the situation here. As the courts noted, the intervention panel anticipated that if it was made a party, Anschutz would offer some new arguments. And it hasn't done that. Anschutz actually asked that and promised that it would come up with something new. It hasn't followed through. It declined to say anything new to the district court when it had the opportunity. And its briefs here don't offer any new arguments or evidence. It could have done so, but it chose not to do so, not to offer that. For that reason alone, that new evidence paints a much different picture from what Anschutz told the intervention panel and what the intervention panel understood to be the case when it allowed Anschutz to join this as a party. And so for all those reasons, law of the case doesn't apply. In terms of remedy, briefly, your honors, I would just point out that the district court's remedy over here of vacating the leases, which is what it understood to be doing, it actually applied the allied signal test expressly, was not an abuse of discretion. Vacateur is the presumptive remedy under this court's precedent in the Administrative Procedure Act. And as I noted, there are numerous cases where courts have vacated oil and gas and mineral leases. So Anschutz is simply wrong as a legal matter that there's some rule against vacating oil and gas leases in cases like this one. Also, the district court's application of the allied signal test was also not an abuse of discretion. The court first, with regard to the first allied signal problem, recognized that BLM's disregard of prioritization was a significant violation because it went to the heart of BLM's decisions about what leases to offer and what leases not to offer. Had BLM actually done prioritization for this lease sale, the sale would have looked much, much different from the one we're challenging here. And is that, since we sort of slid right into that, is that because they simply should not have processed as many? That is, do you read prioritization as being, if you've got the resources to examine all the leases that you've put out, you still should not offer, what, 10%, 50%, 90%? That's basically correct, Your Honor. Yes, and that's the point that the court Based on any particular standard that is, my impression, tell me if I'm wrong, is that everybody kind of thought that BLM was tending to be very slow. They worked through these backlogs. And so let's go to the non-sage grouse. That makes sense. Let's go to the leased sage grouse. You have this whole ladder. But for whatever reason, they got on their horse and hired extra people, apparently. And then you say, these are legitimate leases, but you've got to not let some of them go based on what? So, Your Honor, I think that's the crux of the merits issue in this case, is that prioritization was never about just ordering the leases and BLM to lease as much as it wants to. The mandate under the prioritization, this is clear from the record of the decision, was that BLM had a duty to guide new leasing away from grouse habitat. If nobody wants the non-grouse habitat, are you saying, is there anything in the record that somewhere there's a lot of oil under non-grouse that they just willfully chose not to lease, or that the oil companies conspired not to bid on good oil land? So, Your Honor, there's no bright line rule here. In some cases, you have a situation where, for any given lease sale cycle, there are parcels outside grouse habitat and parcels inside grouse habitat. But in these cases, there weren't any. That's right. In a Montana sale, there was land outside of grouse habitat, and that's how it could be done. In a case where- To me, it is hard to understand what all this means. The best I've been able to do with it over the many years this has been around is that the notion that they have to wait for someone to express an interest is nowhere in the rules or anywhere else. So they could themselves go out and decide which leases to offer, rather than waiting for someone to come in and express an interest. Absolutely, Your Honor. And, in fact, there's a new development in the last year that I think goes to exactly that point, and it's called the formal nominations process. We've discussed it at footnote 11 of our brief on page 39. What this is is a provision that's been in BLM's regulations for years, but it's never been used. But BLM is now in guidance saying it's considering using this for planning future lease sales. What BLM can do is, instead of just reacting to industry leasing proposals, start the process itself and generate a list of the lands that it's willing to consider offering for leases. And then companies who are interested can propose lands, but they can only propose leases on the lands that BLM has identified. But does that depend on knowing whether there's oil under this land? BLM knows that. Their own planning process identifies what lands have potential or not. The oil companies do? I think they both do, probably. But the point there is that by starting the process itself, and with BLM defining the pool of lands that it's willing to consider, it lends itself. It really is tailor-made for applying prioritization in a way that advances the underlying goal of guiding new leasing away from safe grass habitat. You're over your time, so you make. Unless there's further questions, Your Honor, we'll rest. We just asked that the court affirm this report. Thank you. Thank you. I don't know where we are. Anybody has one last comment? I think it would be over here. All right. Thank you, Your Honors. I'll be brief in rebuttal. Really just three points. So I want to talk first about my friend's argument about the law of the case doctrine. He says it doesn't apply for two reasons. One is we didn't put on any new evidence. But again, as Judge Berzon was alluding to, there's a big problem with, and one of the reasons we opposed the offer that they said that they made for us to put on our evidence is the district court had no jurisdiction over the phase one order at that point. And that's Rodriguez v. City of Los Angeles. It had no jurisdiction to modify that order in any way because that order is up on appeal before this court. I think what it could have done was allow you to do it, issue an indicative order, and then have you come here and ask for a limited remand. Probably could have done that. There is a procedure for it. There is a procedure for that. The district court didn't do that because I think if you read the Chesapeake, the published decision from the intervention appeals, there was a specific remand there. It was a remand with instructions to grant the order. But you opposed it. I mean, you didn't want to do it, apparently. It's not that we didn't want to do it. We didn't think there was any authority in the district court to do it. We thought the mandate rule says, no, the only thing the district court can do here is grant our motion and send us back to the national court. I mean, you could have done it in the fashion that we just described. I suppose you could have asked for an, yes. I'm pointing this out because previously you said due process. We didn't have any way of putting anything on. And we were pretty adamant about this. And now this has come up that there was an avenue. I understand the mandate and jurisdiction issue. But that's why I was curious if there was a possibility that could have happened. But you opposed it. We opposed it because we did not think that was lawful. Not that we didn't have any evidence or that we didn't want the opportunity to put on our evidence. We just didn't think that was consistent with the mandate rule or the rule from this court that you can't disturb an order when it's up on appeal. The other thing he says about the law of the case doctrine, so that's sort of the new evidence piece. So he says the new evidence is that we didn't put on any new evidence. But our position is we didn't have any opportunity to do that. We couldn't do that. He also says that the law of the case doctrine doesn't apply to the adequate representation determination because that was only during the intervention appeal. And he somehow is making this argument that this court slices and dices the law of the case doctrine into different phases. And it only applies at one stage, but not another phase. That is fundamentally inconsistent with how the doctrine is supposed to work. The doctrine itself, the whole purpose is to not revisit issues that have already been decided. So it's fundamentally inconsistent to say, well, that was just on the intervention appeal. Now you should re-look at the issue again. That's what the doctrine exists, to save you the burden of having to revisit the exact same issue. Yes, but it has to be the same issue. It is the exact same issue. It has to be the same issue. In other words, the law of the case only applies when we're looking at the same issue. His argument is we aren't looking at the same issue because the intervention panel wasn't deciding anything about the phase one, the adequacy of representation in the district court in phase one. Yes, it was. That was the whole argument, was were your interests That couldn't be cured by the appeal. I mean, it was looking at the appeal as the cure for whatever the problem was, because it said everything else was moot. That's what it said. It said it was moot just because in other aspects of if we had been a party, then of course we wouldn't be able to make the Rule 19 in due process. And it said the Rule 19 issue is moot. Well, it said just like this court always does, when it decides one issue, it doesn't have to decide another. It already determines that we were... It didn't have to decide it because it wasn't deciding anything about phase one. Well, let's be very clear. What was the issue? The issue was did the alliance adequately represent our interests? And it looked at three factors. Is the alliance unquestionably going to make all of Anschutz's arguments? The panel said no. Are they capable and willing to make all of Anschutz's arguments? No. And does Anschutz bring something unique to this case that the alliance does not bring? Yes. Anschutz bought these leases. They have a due process interest in these leases. The alliance does not. None of that has changed. And those same three factors I just walked through, that's Shermoin versus United States, where this court said Rule 19 and Rule 24, the analysis is the same. And then if you keep reading the very next sentence where they say the analysis is the same, the court articulated the three factors I just marched through. So that issue has been reached and resolved by the intervention panel in this case. Thank you very much. I really appreciate your willingness to change the order of the cases and to help us get our arms around this very challenging case, especially at this stage. So thank you all very much. The cases of Montana Wildlife versus Holland, Western Energy Alliance and Anschutz in the United States are submitted as is the case of Western Watersheds Project Center for Biological Diversity versus Holland, State of Wyoming and Chesapeake Exploration and Anschutz Exploration in the United States. Cases are submitted and we are adjourned. Thank you. Thank you. Thank you.
judges: MURGUIA, Boggs, BERZON